OPINION OF THE COURT
Melchor E. Castro, J.
This nonpayment summary proceeding was commenced by the petitioner seeking October 1993 rent in the amount of $194, attorney’s fees, damage charges, utility charges for the period May through October 1993, and late charges and disbursements.[1] The respondent answered by generally denying the allegations contained in the petition, as well as asserting that the additional charges are not rent and exceed the rent cap imposed by the Federal housing programs in which the parties are participating. The respondent also avers that the October rent was tendered but refused; that the damage to the apartment was not caused by her, or that it constitutes reasonable wear and tear; and that the landlord has breached the warranty of habitability.
Although the court will conduct a hearing with respect to the issues regarding the petitioner’s alleged breach of the warranty of habitability, and the respondent’s liability for damage to the premises, the respondent’s application to dismiss the petition upon the ground that the add-on charges do not constitute rent is denied.
The petitioner is the owner of St. Simon’s Terrace, a private housing project located in Rochester, New York. St. Simon’s is a participant in two Federally subsidized housing programs. The first is the Section 236 Program, by which the petitioner receives below-market interest reduction payments on its mortgage (12 USC § 1715z-l). The second is the Rent Supplement Program, by which the petitioner receives additional subsidies for up to 64 of its rental units (12 USC § 1701s). In addition, the petitioner is subject to regulation by the New York State Division of Housing and Community Renewal (DHCR) (9 NYCRR 1725 et seq.)
The respondent first argues that the petition should be dismissed because the assessed charges are not rent as that *720 term is defined by the statutes that created the programs the petitioner is participating in. The respondent also urges that, even if considered rent, the additional charges violate the statutory and regulatory provisions that cap the tenant’s share of the rent and that neither the Department of Housing and Urban Development (HUD) nor DHCR have approved such extra charges as rent (see, 12 USC §§ 1701s, 1715z-l; 24 CFR 236.55, 215.45, 245.330 [b]). The court must decide whether attorney’s fees and other charges are rent under the statute and whether a cap of 30% of the tenant’s income applies to the tenant’s share of the rent.
Since the enactment of the Housing Act of 1949 (42 USC § 1441), the national housing policy of the United States has been to remedy the housing shortage and eliminate substandard housing by providing "a decent home and a suitable living environment for all American families” (S Rep No. 84, 81st Cong, 1st Sess, reprinted in 1949 US Code Cong & Admin News 1582). Realizing that national housing objectives were not being achieved, Congress enacted section 236 of the Housing and Urban Development Act of 1968 (12 USC § 1715z-l et seq.). Congress believed that its use, with the Rent Supplement Program (section 101 of the Housing and Urban Development Act of 1965 [12 USC § 1701s]), would allow for a "sufficient deepening of subsidy to reach those families most in need of assistance.” (HR Rep No. 1556, 91st Cong, 2d Sess, reprinted in 1970 US Code Cong & Admin News 5582, 5593.) The programs seek to achieve national housing objectives by attacking the need for lower income housing from two directions. The Section 236 Program reduces the cost of housing to lower income tenants by lowering the operating costs to the landlord and thereby reducing the cost of the rental unit. The Rent Supplement Program reduces the cost of housing by paying a portion of an eligible tenant’s monthly rent (see, HR Rep No. 365, 89th Cong, 1st Sess, reprinted in 1965 US Code Cong & Admin News 2614, 2617-2619).
Under the Section 236 Program, HUD makes monthly interest reduction payments, on behalf of the project owner, to the mortgagee. The payments are the difference between the monthly payment for principal, interest, and mortgage insurance premium which the project owner would be obliged to pay under a contracted market rate and an amount that would be required for a similar mortgage bearing interest at 1% (12 USC § 1715z-l [c]). The purpose of these payments is to bring monthly rental charges to a level which lower income *721 families could afford (see, HR Rep No. 1585, 90th Cong, 2d Sess, reprinted in 1968 US Code Cong & Admin News 2873, 2894). The statute authorizes HUD to establish such rental charges. In doing so, HUD approves a basic rent "determined on the basis of operating the project with payments of principal and interest due under a mortgage bearing interest at the rate of 1 per centum per annum.” (12 USC § 1715z-l [f] [1] [A]; HR Rep No. 1585, 90th Cong, 2d Sess, reprinted in 1968 US Code Cong & Admin News 2873, 2894.)
Based on the statutory language and the corresponding legislative history, the court in Mandina v Lynn (357 F Supp 269, 276) stated that basic rent "is the amount required to operate the project and includes the amount necessary to amortize the mortgage at one percent interest. The 'basic rent’ cannot legally include the amount estimated for utilities and for repairs and periodic redecorations.” Although the court did not consider the corresponding regulations in its analysis, the regulations in effect at that time mirrored the statutory language.
In 1986, in exercise of its broad rule-making authority[2] (12 USC § 1715z-l [h]), HUD amended 24 CFR 236.55 by specifying how it would determine maximum rental charges for Section 236 Projects (see, 51 Fed Reg 20264). The new regulations permit HUD to establish and determine rental charges for the project based on, but not limited to, the operating costs of the project (24 CFR 236.55 [a]; see, Beck Park Apts. v United States Dept. of Hous. & Urban Dev., 695 F2d 366). The term "operating costs” is not defined in the statute or the regulations. However, operating costs or operating expenses are defined as noncapital expenditures, regularly and usually incurred as part of the ordinary activities of an entity (see, Black’s Law Dictionary 1091 [6th ed 1990]). As so defined, such costs as attorney’s fees, damage charges and utility costs, are operating costs which may be included in determining rental charges for a Section 236 Project.
The respondent’s contention that the petitioner failed to demonstrate that HUD or DHCR approved such charges as added rent is without merit. The respondent cites 24 CFR part 245, subpart D as authority. However, that section deals with procedures that a mortgagor must follow in applying for yearly rental increase approvals. That provision is inapplica *722 ble to the present case because the charges that the petitioner is requesting are not deemed to be yearly rental increases, but only monthly rental charges that the respondent has a duty to pay under her lease.
Since this court concludes that attorney’s fees and the additional charges are rent within the context of the statutory and regulatory framework, the inquiry shifts to whether either the Rent Supplement Program or the Section 236 Program impose a cap of 30% of the tenant’s income on the tenant’s share of the rent. In order to resolve the issue, the court must look to the statutory language (see, Bread Political Action Comm. v FEC, 455 US 577). Absent "a clearly expressed legislative intention to the contrary, the [plain] language [of the statute] must ordinarily be regarded as conclusive.” (Supra, at 580.)
Pursuant to 12 USC § 1715z-l (f) (1), the "rental for each dwelling unit shall be at the basic rental charge or such greater amount, not exceeding the fair market rental charge, as represents 30 per centum of the tenant’s adjusted income.” The respondent incorrectly relies on this section as a limitation on the tenant’s share of the basic rent. Rather, the 30% income cap applies to the maximum basic rent which may be charged in those cases where 30% of the tenant’s income exceeds the basic rental charge. Nor does the corresponding regulation place such a limit on the tenant’s share of the rent.[3]
Although not specifically addressed in the statute, the regulations under the Rent Supplement Program specify a threshold level of rent for which the tenant is responsible. The regulations state that "[t]he Total Tenant Payment rounded to the nearest dollar, shall be the greater of: (1) 30 percent of one-twelth of the tenant’s Adjusted Income; or (2) 30 percent of the Gross Rent for the unit.” (24 CFR 215.45 [b].) Whatever the tenant’s income, the rent supplement payments paid by HUD may not exceed 70% of the approved rent (24 CFR 215.20). These regulations do not place a limit on the tenant’s share of the rent.[4]
*723 Finally, it is well established in New York that as long as it is stipulated between parties that extra charges are to be deemed as "additional rent” under the lease, a summary proceeding for their nonpayment is maintainable (see, 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 32:9, at 509-510 [3d ed]; Matter of Petrakakis v Crown Hotels, 3 AD2d 635). For instance, if attorney’s fees constitute additional rent under the lease, the landlord is entitled to maintain a summary proceeding for nonpayment and to collect attorney’s fees if he or she prevails (Hollywood Park Assocs. v Dingman, 57 AD2d 1053; Barrow Realty Corp. v Village Brewery Rest., 272 App Div 262). In the instant case, paragraphs 20 and 22 of the lease specifically provide that the petitioner is entitled to attorney’s fees, which are deemed to be additional rent, and the court will not preclude it from such. Furthermore, paragraph 6 of the lease provides that repairs to damage caused by the tenant are deemed to be additional rent. The petitioner has included, among its exhibits, invoices dating from April 1993 that were sent to the tenant which reflect damage charges in the amount of $521.25.[5] The late fees and disbursements are also covered under paragraphs 1 and 20 of the lease. However, since the electric charges for the tenant’s freezer are not deemed to be additional rent under the lease, the petitioner is prohibited from bringing a summary proceeding to collect such as additional rent.[6]

. The respondent has since tendered rent and the electric charges for the month of October in the amount of $216. The petitioner has refused the rent pending the outcome of this proceeding.

. Such authority is entitled to deference by the courts (see, e.g., Chevron U.S.A. v Natural Resources Defense Council, 467 US 837).

. The Section 236 regulations provide that the rent that can be charged by a project owner is "the greater of the Basic Rent or 30 percent of the tenant’s Adjusted Monthly Income” (24 CFR 236.55 [b] [1]). The only limitation placed on the rental charge is that it may not exceed the fair market rental charge (24 CFR 236.55 [b] [3]).

. For instance, under the regulations, if the gross rent is $600 and the *723 tenant’s monthly income is $500, HUD contribution cannot exceed $420. The remaining $180 must be paid by the tenant regardless of the fact that the $180 is more than 30% of the tenant’s monthly income.

. The court is aware that the invoices reflect charges for a period of several months. However, the doctrine of laches is not applicable here (see Gramford Realty Corp. v Valentin, 71 Misc 2d 784), since the respondent failed to raise any equitable defense, and the papers do not demonstrate a deliberate delay on petitioner’s behalf.

. While paragraph 5 (E) of the lease provides for air-conditioning charges to be considered as additional rent, there is no such language under paragraph 5 (D) of the lease which provides for other appliances.