509 A.2d 719

**NATIONWIDE MUTUAL INSURANCE COMPANY, et al.**

v.

**INSURANCE COMMISSIONER, State of Maryland.**

**No. 1203, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

June 5, 1986.

Robert J. Carson (Donald J. McCartney, Patricia M. Lambert and Smith, Somerville & Case, on brief), Baltimore, for appellants.

Kathleen M. Sweeney, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee, Ins. Com'r of Maryland.

Noel F. Danto, Silver Spring (Sandbower, Gabler & O'Shaughnessy, P.A. on brief), Baltimore, for appellee, John T. Derwart.

Argued before GILBERT, C.J., and MOYLAN and WEANT, JJ.

PER CURIAM.

At issue here is the legality of a program which the appellants, the Nationwide group of insurance companies, instituted in 1979 in an effort to curb rising automobile accident claim losses. The appellants are Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, and Colonial Insurance Company of California (hereinafter collectively referred to as Nationwide). On February 1, 1979, Nationwide instituted a program for its Maryland agents known as the Automobile Loss Improvement Program (ALIP). The program was designed to reduce automobile underwriting losses and thereby keep insurance rates down and put the company in a more competitive position in the automobile insurance market.

In 1985, John T. Derwart, a Nationwide agent affected by the program, filed a complaint with the Maryland Insurance Division challenging the legality of ALIP. Derwart alleged

that the program discriminated against him, in violation of Md.Ann. Code Art. 48A, § 234B(d). Following 13 days of hearing, Assistant Insurance Commissioner Thomas P. Raimondi concluded that ALIP "is arbitrary, capricious, unfair and discriminatory and in violation of Maryland Article 48A, § 234B(d) which violation constitutes an unfair trade practice within the scope of § 215(a)." The Insurance Commissioner found that "agents who write in high premium urban areas are adversely affected by ALIP, to the detriment of themselves and their policyholders." The Insurance Commissioner ordered Nationwide to "cease and desist the use of its Automobile Loss Improvement Program to the extent the Program effects a restriction of binding authority based on the Program's formula." The Insurance Commissioner also ordered that "prior to implementing any changes in this Program [ALIP] or any other Program of this nature, [Nationwide] shall submit that Program to the Insurance Commissioner for prior approval" and ordered that Nationwide "accept the risks or accept the business of the Complainant, John T. Derwart, without the binding restriction as implemented under" ALIP. Nationwide filed an appeal to the Circuit Court for Baltimore City pursuant to Art. 48A, § 40(1). After a four-day hearing, at which additional evidence was presented, Judge Joseph H.H. Kaplan issued a Memorandum Opinion and Order affirming the order of the Insurance Commissioner. Nationwide has noted this appeal to the Court of Special Appeals.

All the contentions Nationwide raises on this appeal were raised before Judge Kaplan. In his well-reasoned Memorandum Opinion and Order, Judge Kaplan fully considered and disposed of Nationwide's contentions. Judge Kaplan concluded that "the Insurance Commissioner's finding was supported by substantial and competent evidence." After a careful review of the entire record, we concur completely with Judge Kaplan in his opinion. Any discussion by us of Nationwide's contentions would only paraphrase the very thorough and articulate explanation which Judge Kaplan

gave for his decision and would deny him the credit he rightly deserves for an excellent opinion. We, therefore, affirm Judge Kaplan's decision and adopt his Memorandum Opinion and Order as the opinion of this Court.

## MEMORANDUM OPINION AND ORDER

Nationwide Mutual Insurance Company ("Nationwide") appeals a decision by the Insurance Commissioner which determined that Nationwide's Automobile Loss Improvement Program ("ALIP") was discriminatory within the meaning of Section 234B(d) of Article 48A of the Annotated Code of Maryland because ALIP adversely affects agents and policyholders in high premium urban areas.

The material facts are not in dispute. In 1979 Nationwide found that it was losing policies in the personal automobile insurance market in Maryland because heavy losses had caused the company to raise its rates. In an effort to reduce the losses and become more competitive in the Maryland market, Nationwide instituted ALIP. The purpose of the program, according to Nationwide, was to improve the quality of input for unprofitable agent portfolios and to work with the existing portfolios to improve their profitability. ALIP applied to all Nationwide agents, including independent contractors (who are under exclusive contracts with Nationwide), business agents, and newly employed agents of the company.

Although the program originally consisted of one level, ALIP has continuously evolved and is now comprised of three separate levels. Level I consists of all agents with a three-year loss ratio over 65% (loss ratio is calculated by dividing the losses and loss adjustment expense by the earned premium). When an agent is placed on Level I the underwriter and the district sales manager work with the agent to increase his premiums and reduce his losses. Level II is an extension of Level I. Portfolios are placed on Level II if they have a three-year loss ratio over 65% and have $200,000 or more of losses in a

three-year period. Losses are calculated by taking the most recent three-year loss ratio, subtracting 65%, and multiplying the result by the three-year earned premium. Portfolios exempted from Level II are those with a loss ratio of 65% or below for any three of the previous six-month periods and those where a single large loss adversely impacted several periods of an otherwise profitable portfolio. As with Level I, the Level II agent is to work with the underwriter and the district sales manager to improve his portfolio. In addition, however, an agent placed on Level II has his binding authority restricted to married risks. Any other new business has to be first submitted to underwriting for approval or rejection of the risk. Level III consists of all Level II agents who have been on Level II for six or more continuous six-month periods. When an agent is placed on Level III, Nationwide removes completely his authority to write binding personal automobile insurance.

John T. Derwart, the complainant below, is a Nationwide agent with independent contractor status. Derwart has signed at least three different independent agent agreements with Nationwide, the most recent being in June, 1983. Derwart has been working for the company since 1974. In 1975, Derwart began to work out of an office in the Dundalk area of Baltimore. When he moved to that location, Derwart inherited the business of a Nationwide agent who had retired. In addition to inheriting the business, Derwart inherited the retired agent's loss ratio, which was 62.5%. Derwart's loss ratio before the move was 39%.

In 1979 Nationwide placed Derwart in ALIP. Although he was removed briefly from ALIP in 1980, Derwart has since remained under the restrictions of the program. In 1981 Nationwide placed Derwart on Level II, whereby he had to get all new business except married risks approved by underwriting before he could bind. Fearing for his job, Derwart tried to qualify for removal from ALIP by making efforts to reduce his loss ratio.

His entire portfolio was underwritten twice with the help of Nationwide's underwriter. Although not required to do so on Level II, Derwart submitted his married applicants for prior approval. He sought assistance from his district sales manager. He increased deductibles and limitations of coverage. All to no avail. In February, 1985, Derwart was notified that he was being placed on Level III. At that point, Derwart's authority to write any automobile insurance was removed. Approximately 75% of Derwart's income was derived from auto insurance. Needless to say, Derwart lost substantial business and income as a result of being placed on Level II and Level III. Derwart was not the only Nationwide agent in the Baltimore Metropolitan Area to be fettered and frozen by the imposition of ALIP. A review of another such agent, Russell Bloom, accents the futility of Level III as a rehabilitative tool. Bloom is a Level III agent with a three-year loss ratio of 109%. The company worked closely with Bloom over a long period of time in an attempt to extricate him from the program. A special underwriter met with Bloom to try to reduce Bloom's loss ratio. Bloom submitted approximately 200 trial applications to underwriting that were rejected. His district sales manager met with Bloom after every six-month experience report to recommend improvement techniques. In addition, the district sales manager, noting at the time that Bloom's three years on ALIP had resulted in only negligible improvement, initiated a separate program specially designed for Bloom whereby he met with Bloom twice a week to review and help underwrite policies. These rescue attempts failed, however, and Bloom's district sales manager ceased to make recommendations. As with other Level III agents, all Nationwide's efforts and all of Nationwide's men could not put Bloom's portfolio back together again. Although the intended purpose of ALIP was rehabilitative, Level III is clearly a dead end. The record is replete with instances of Nationwide

agents being placed on Level III, but void of any instance of an agent being removed from that level.

Derwart filed a complaint with the Insurance Commissioner, alleging that ALIP violated Article 48A, § 234B(d) of the Annotated Code of Maryland, which prohibits insurance companies from discriminating against agents. A formal hearing on the matter took place before Assistant Insurance Commissioner Thomas P. Raimondi. After some thirteen days of testimony, Raimondi concluded that ALIP was "arbitrary, capricious, unfair and discriminatory and in violation of Maryland Article 48A, § 234B(d) which violation constitutes an unfair trade practice within the scope of § 215(a)." May 13, 1985, Memorandum and Order, p. 15. The Assistant Commissioner ordered Nationwide:

1) to cease and desist the use of its Automobile Loss Improvement Program to the extent the Program effects a restriction of binding authority based on the Program's formula;

2) to submit any changes in the Program to the Insurance Commissioner before implementation; and,

3) to accept the risks or accept the business of Derwart without the binding restrictions as implemented under ALIP.

Nationwide timely appealed Raimondi's order. The case was heard on the record along with any additional evidence presented.

In an effort to protect the public in the vital area of insurance, the General Assembly, beginning in 1970, enacted a series of statutes limiting the freedom of insurance companies to contract. Section 234B was one such statute. Sections 234B, 234A and 234C of Article 48A were originally enacted by the legislature in 1970 "to establish standards of fairness in insurance underwriting and treatment of agents or brokers, and to confer authority on the Insurance Commissioner to remedy failure to observe such standards." Preamble, Ch. 417 of the Laws of Maryland, 1970, p. 987. Section 234B(d) provides:

Notwithstanding any other provisions of this section, no insurer may cancel or amend a written agreement with an agent, or broker, or refuse to accept business from such agent or broker if the cancellation or amendment is arbitrary, capricious, unfair, discriminatory, or based in whole or part upon the race, creed, color, sex, religion, national origin, place or residency of the agent or broker, his applicants or policyholders.

Section 215(a) grants the Commissioner the authority to issue cease and desist orders for violations of the subtitle.

The primary issue in this case is whether Nationwide's Auto Loss Improvement Program is arbitrary, capricious, unfair and discriminatory under Section 234B(d). The Insurance Commissioner decided that it was. Nationwide contests that decision, arguing, *inter alia*, that ALIP is actuarily sound, that it is not discriminatory under Section 234B(d), and that policyholder harm must be proven before Section 234(d) is activated. Before addressing these arguments, it is necessary to discuss the applicable standard of review for appeals from the Insurance Commissioner.

Article 48A, § 40 governs judicial review of appeals from the Insurance Commission. Section 40(5) provides that the Commissioner's Order may be reversed or modified by the Court:

[I]f the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(i) In violation of constitutional provisions; or

(ii) In excess of the statutory authority or jurisdiction of the Commissioner; or

(iii) Made upon unlawful procedure; or

(iv) Affected by other error of law; or

(v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(vi) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(viii) Arbitrary or capricious.

■ In short, and as capsulized by the Court of Appeals, "the basic standard for reviewing an administrative finding by the Insurance Commissioner is whether the finding is supported by 'substantial evidence.' This means whether 'a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " *Lumbermen's Mutual Casualty v. Insurance Commissioner*, 302 Md. 248, 266 [487 A.2d 271] (1985), quoting from *Prince George's Doctors' Hospital v. Health Services Cost Review Commission*, 302 Md. 193, 200–201 [486 A.2d 744] (1985), and *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512 [390 A.2d 1119] (1978), and *Insurance Commissioner v. National Bureau*, 248 Md. 292, 309 [236 A.2d 282] (1967). In addition, the Court of Appeals has emphasized that in applying the substantial evidence test, a court is not to substitute its judgment for the expertise of the administrative agency. *Bulluck*, 283 Md. at 513 [390 A.2d 1119]. Furthermore, the decisions of administrative agencies are *prima facie* correct, and thus must be viewed in the light most favorable to the agency. *Id.* With this standard in mind, the Court will address the arguments put forth by Nationwide.

■ Essentially, the only new evidence offered at trial by Nationwide concerning ALIP was testimony of experts that ALIP is actuarily sound. There is no doubt that ALIP is actuarially sound. ALIP was created to pinpoint those agents with certain levels of dollars in excess of a target loss ratio, and that is precisely what it does. That ALIP is actuarially sound, however, does not prevent it from being discriminatory. Nor does the argument that

it was applied uniformly throughout Maryland prevent ALIP from violating the letter and spirit of Section 234B(d). Despite any actuarially soundness or uniform application, the clear effect of ALIP is to discriminate against those agents who happened to be writing policies in high premium areas. The reason for this discordant treatment is the combination of Nationwide's premium rate structure and the $200,000 loss threshold.

The $200,000 loss threshold is computed by multiplying the three-year [earned] premium by the percentage of the agent's loss ratio exceeding 65%. The problem with the formula is that the agent does not have exclusive control over his earned premium, and thus cannot, by his own efforts, reduce the premium and thereby reduce the loss threshold amount. An agent's earned premium is the product of two factors. The first factor, which the agent can control, is the number of policies written. The second factor, however, the premium fixed by the company, is within the exclusive control of Nationwide. Nationwide's rate filing, as approved by the Insurance Commissioner on December 1, 1984, shows that higher rates are charged in the urban areas than in the rural areas. All eleven agents placed on Level III, including Derwart, have offices in high premium areas. The evidence failed to show any Level III agents operating primarily in low premium areas. What the evidence did establish, in comparison, was that agents in rural areas with higher loss ratios than Derwart's escaped ALIP. Indeed, even if the rural agents with higher loss ratios than Derwart's wrote the exact same number of policies as he did, they still escaped the program. Quite simply, the higher the earned premium, the more likely it is under the formula that the agent will reach the $200,000 threshold. Therefore, Derwart, because of his location, was discriminated against under Section 234B(d) when Nationwide, through ALIP, amended his contract and refused to accept business from him.

 Nationwide's second attack on the Insurance Commissioner's decision concerns the breadth of Section 234B(d). This section, the company argues, is only triggered when policyholder harm is shown. This contention is belied by the unambiguous language of the statute. Section 234B(d) makes clear that the insurer may not "cancel or amend a written contract with an agent or broker, or refuse to accept business from such *agent or broker* if the cancellation is arbitrary...." (Emphasis added). The only mention of policyholders in the section is made in reference to the criteria the insurer may not use when deciding to cancel or amend the agent's contract, or refuse to accept the agent's business. The section prohibits the insurer from refusing to accept the agent's business if that decision is "based in whole or part upon the race, creed, color, sex, religion, national origin, place of residency of the agent or broker, his applicant *or* policyholder." (Emphasis added). The reference to policyholders simply indicates that the insurer may not discriminate against an agent because of the type of business the agent writes. For example, the insurer may not discriminate against an agent who writes an insurance contract for a "policyholder" for the sole reason that the policyholder's "place of residence" is Baltimore City.

 Further evidence that Section 234B(d) applies only to agent harm, and not to policyholder harm, is that policyholders are amply protected elsewhere in Article 48A. *See* § 234A (general provision protecting insureds from discrimination) and § 234B(c) (forbidding the insurer from cancelling or refusing to renew an insured's policy because of termination of the agent). Statutory language that is not ambiguous is to be given its ordinary meaning, *Mayor and City Council of Baltimore v. Hackley*, 300 Md. 277, 283 [477 A.2d 1174] (1984), and the clear and ordinary meaning of Section 234B(d) is that no showing of policyholder harm is required. In addition, although policyholder harm need not be shown, the Insurance Commis-

sioner properly found that ALIP is potentially discrimina-
tory to both agent and policyholder. Because ALIP,
especially Level III, restricts the ability of an agent to
write policies for certain customers, policyholders in high
premium areas, for example the Baltimore Metropolitan
Area, have their access to insurance diminished.

 Nationwide's third argument is that the compa-
ny was denied procedural due process at the administra-
tive hearing in that Raimondi used extra-record evidence
given to him after the hearing to reach his decision and
that there was an impermissible blending of investigative,
prosecutorial, and judicial functions. First, Nationwide
contends that it never had an opportunity to rebut the
contents of charts A, B and C referred to in Raimondi's
decision because the charts were never shown to Nation-
wide. The charts were prepared by Frank Nayden, a
staff specialist who assisted Raimondi. Nationwide is
correct in asserting that procedural due process is denied
when an administrative agency uses extra-record evi-
dence given it after a hearing for the basis of its decision.
*Temmink v. Board of Zoning Appeals*, 205 Md. 489 [109
A.2d 85] (1954). In *Temmink*, the Board of Zoning
Appeals, after hearing testimony from both sides concern-
ing a zoning change, asked for and received a report from
The Baltimore County Planning Commission. *Id.* at 496
[109 A.2d 85]. The report in *Temmink* consisted of new
and additional evidence from an independent source.
Such is not the case here. The charts prepared by
Nayden were conclusory in nature. The evidence from
which the charts were compiled was presented at the
hearing, with Nationwide free then to rebut it. Unlike
*Temmink*, the charts did not originate from an indepen-
dent source and did not constitute new evidence, but were
merely illustrative and thus not necessary to Raimondi's
decision. Nationwide also contends that the charts con-
tained inaccuracies, and therefore Raimondi's decision
should be set aside because it is based on erroneous data.
The Court has compared the evidence presented at trial

with the data contained in the charts. Any inaccuracies are miniscule, and thus harmless. The evidence clearly established that, despite any inaccuracies, more than enough evidence on the effect of ALIP was before Raimondi to support his decision.

■ Nationwide's second procedural due process argument is that certain actions by Nayden constituted an impermissible blending of investigative, prosecutorial, and judicial functions. Specifically, Nationwide contends that certain *"ex parte* communications" by Nayden to Raimondi and Nayden's questioning of witnesses denied Nationwide due process. As to the *ex parte* communications, Nationwide relies on *Camero v. United States,* 375 F.2d 777 (Ct.Cl.1967) and *Brown v. United States,* 377 F.Supp. 530 (N.D. Tex. 1974). Those cases, however, dealt with *ex parte* communications from counsel representing one of the parties at the hearing to the hearing examiner. Nayden, in comparison, did not represent either Derwart or Nationwide, but was merely assisting Raimondi.

■ Likewise, Nationwide's claim of impermissible blending is of no merit. The Supreme Court of the United States has been extremely reluctant to find denial of due process based on impermissible blending of adjudicative and investigatory functions. *Withrow v. Larkin,* 421 U.S. 35 [95 S.Ct. 1456, 43 L.Ed.2d 712] (1975). In *Withrow* the Court rejected such a claim stating that the complaining party had a "difficult burden of persuasion to carry" in that:

"[i]t must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal or psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 47 [95 S.Ct. at 1464].

Nationwide has failed to overcome that presumption. In any case, this Court rejects the due process argument because there has been no showing of the blending of investigatory and prosecutorial functions. Nayden did not participate in the Insurance Division's review of Derwart's complaint prior to the hearing. He simply functioned as an arm of the Hearing Officer, and as such his actions were proper.

■■■ As a final claim for relief, Nationwide complains that the scope of the Commissioner's order pertaining to Nationwide's having to submit changes in ALIP to the Commissioner for prior approval was impermissible in that it exceeded the Commissioner's authority. For support, Nationwide cites *Nuger v. State Insurance Commissioner*, 238 Md. 55 [207 A.2d 619] (1965), in which the Court of Appeals held that an order by the Insurance Commissioner revoking the "qualifications" of two insurance agents to engage in the insurance business in Maryland was improper. The Commissioner in *Nuger* was attempting to prevent the agents from being able to renew their licenses by making a future declaratory judgment of their qualifications. *Id.* at 71 [207 A.2d 619]. As no such "judicial declaratory judgment" exists in Raimondi's order, Nationwide's reliance on *Nuger* is misplaced. Raimondi's order contained no type of future declaration. Raimondi correctly found that ALIP violated Section 234B(d). His order simply requires Nationwide to submit any proposed changes to the discriminatory program, and is thus proper. *See* Md.Ann. Code Art. 48A, § 24(2).

■■■ Nationwide has failed to demonstrate that it is entitled to a reversal of the Insurance Commissioner's May 13 Memorandum and Order. The Court finds, for the reasons contained in this opinion, that ALIP violates Section 234B(d) and constitutes an unfair trade practice under Section 215(a). *A fortiori*, the Insurance Commissioner's finding was supported by substantial and competent evidence.

Accordingly, it is ORDERED this 30th day of August, 1985, that the Insurance Commissioner's Order of May 13, 1985, be and it is hereby AFFIRMED, the appeal of Nationwide dismissed with Nationwide to pay the costs.

/s/_____

Judge Joseph H.H. Kaplan

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANTS.