597 A.2d 992

**INSURANCE COMMISSIONER of the State of Maryland, et al.**

v.

**LINCOLN NATIONAL LIFE INSURANCE CORPORATION.**

No. 1835, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Oct. 31, 1991.

Certiorari Granted Feb. 18, 1992.

Meg L. Rosthal, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty., on the brief), Baltimore, for appellant, Insurance Commissioner.

Edward J. Birrane, Jr. (Barry S. Brown and Birrane, Harlan & Cooke, on the brief), Baltimore, for appellant, Gerald R. Veydt.

.Bryan D. Bolton (Deborah R. Rivkin and Shapiro and Olander, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BLOOM and MOTZ, JJ.

BLOOM, Judge.

The sole issue in this appeal is one of statutory construction. The statute in question, Md.Code Ann., art. 48A, § 234B(b) (1991 Repl.Vol.), was interpreted one way by the Insurance Commissioner of Maryland and a different way by the Circuit Court for Baltimore City, to which the Commissioner's decision was appealed by Lincoln National Life Insurance Corporation (Lincoln). The Commissioner and Gerald Veydt, in whose favor the Commissioner had ruled, then filed this appeal from the judgment of the circuit court.

We believe that the Commissioner's interpretation of the statute was the correct one; accordingly, we shall reverse the circuit court's judgment.

### Background

Veydt, pursuant to a written "Career Producer's Contract" with Lincoln, solicited applications for life and health insurance policies on behalf of Lincoln. On 28 March 1988

Lincoln wrote to Veydt, informing him that his agency contract would be terminated as of 31 March 1988. Veydt filed a complaint with the Insurance Division, asserting that Lincoln's termination of his agency contract on three days notice violated Md.Code Ann., art. 48A, § 234B(b) (1991 Repl.Vol.).

Following a hearing on Veydt's complaint, the Insurance Commissioner, through Associate Deputy Commissioner Thomas P. Raimondi, who served as hearing officer, concluded that Lincoln had violated § 234B(b) of art. 48A in terminating Veydt's agency and ordered Lincoln to reinstate Veydt's agency contract immediately.

On Lincoln's appeal to it from that decision and order, the Circuit Court for Baltimore City reversed the Commissioner, ruling that § 234B(b) did not apply to insurance companies that issued life, health, surety, wet marine, or title insurance and their brokers and agents who generated such policies.

### The Statute

Subsections (a) and (b) of § 234B of art. 48A (the Insurance Code) provide:

(a) No insurer may cancel a written agreement with a broker or agent with respect to insurance or refuse to accept insurance business from such broker or agent unless it complies with the provisions of this section.

(b) If an insurer intends to cancel a written agreement with an agent or broker, or intends to refuse any class of renewal business from the agent or broker, the insurer shall give the agent or broker not less than 90 days written notice. Notwithstanding any provision of the agreement to the contrary, the insurer shall continue for not less than one year after termination of the agency agreement to renew through the agent or broker any of the policies which have not been replaced with other insurers as expirations occur. This subsection shall not apply to: (1) agents or brokers or policies of a company or group of companies represented by agents or brokers

who by contractual agreement represent only that company or group of companies if the business is owned by the company or group of companies and the cancellation of any contractual agreement does not result in the cancellation or refusal to renew any policies of insurance; or, (2) life, health, surety, wet marine and title insurance policies.

## Standard of Review

The standard of review applied by a reviewing court to quasi-judicial decisions of the Insurance Commissioner is set forth in article 48A, § 40, which states:

(5) *Judgment*—The court may affirm the decision of the Commissioner or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(i) In violation of constitutional provisions; or

(ii) In excess of the statutory authority or jurisdiction of the Commissioner; or

(iii) Made upon unlawful procedure; or

(iv) Affected by other error of law; or

(v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(vi) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(viii) Arbitrary or capricious.

If the issue before us were whether the Commissioner's decision (or that of any administrative agency) is supported by substantial evidence, *i.e.*, "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," *State Election Bd. v. Billhimer*, 314 Md. 46, 58, 548 A.2d 819 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989), we would be bound by the rule that a reviewing court must not substitute its judgment for the expertise of the agency, *id.* at 58, 548 A.2d 819, because the decisions of administrative agencies are *prima facie* correct, and thus must be viewed in the light most favorable to the agency. *Nationwide Mutual Insurance Company v. Insurance Commissioner*, 67 Md. App. 727, 509 A.2d 719 (1986).

This appeal, however, does not involve fact-finding. We are faced with an issue of statutory interpretation, which necessarily involves a question of law. *People's Counsel v. Maryland Marine*, 316 Md. 491, 497, 560 A.2d 32 (1989); *Supervisor v. Chase Associates*, 306 Md. 568, 574, 510 A.2d 568 (1986). The Court of Appeals has held that when an agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency. *Billhimer*, 314 Md. at 59, 548 A.2d 819; *Washington Nat'l Arena v. Comptroller*, 308 Md. 370, 378–79, 519 A.2d 1277 (1987); *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985); *Thames Point Assoc. v. Supervisor*, 68 Md.App. 1, 9–10, 509 A.2d 1207 (1986).

We note that construction of a statute by an agency charged with its enforcement is entitled to great weight. *See Public Serv. Comm'n v. Howard Res.*, 271 Md. 141, 152, 314 A.2d 682 (1974); *Jackson Marine Sales v. St. Dep't.*, 32 Md.App. 213, 217, 359 A.2d 228 (1975), *cert. denied*, 278 Md. 725 (1976). Nevertheless, a reviewing court is charged with ascertaining errors in the interpretation and application of law. Therefore, a reviewing court, faced with an erroneous interpretation and application of a law, may substitute its own judgment for that of the administrative agency.

*Discussion*

With those standards of review in mind, we turn to the statute at hand, Md.Code Ann., art. 48A, § 234B.

Before undertaking to construe § 234B(b), it is appropriate that we review the principle canons of statutory construction. "To ascertain and effectuate the actual legislative intention in enacting any statute is, of course, the cardinal rule of statutory interpretation," *State v. Intercontinental, Ltd.*, 302 Md. 132, 137, 486 A.2d 174 (1985); *In Re Criminal Investigation No. 1–162*, 307 Md. 674, 685, 516 A.2d 976 (1986); *Sites v. State*, 300 Md. 702, 710, 481 A.2d 192 (1984), *cited in Gray v. Anne Arundel County*, 73 Md.App. 301, 309, 533 A.2d 1325 (1987), the primary source of which is the language of the statute itself. *Gray*, 73 Md.App. at 309, 533 A.2d 1325; *Bridges v. Nicely*, 304 Md. 1, 10, 497 A.2d 142 (1985); *Blum v. Blum*, 295 Md. 135, 140, 453 A.2d 824 (1983). We said in *Ford Motor Land Development v. Comptroller:*

> Thus, where "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). Furthermore, the statute must be construed considering the context in which the words are used and viewing all pertinent parts, provisions, and sections so as to assure a construction consistent with the entire statute. *Comptroller v. Mandel Re-election Com.*, 280 Md. 575, 579, 374 A.2d 1130 (1977). And, if there is no clear indication to the contrary, a statute must be read so that no part of it is "rendered surplusage, superfluous, meaningless, or nugatory." *Bd. of Educ., Garrett Co. v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185 (1982); *Baltimore Building and Construction Trades Council v. Barnes*, 290 Md. 9, 15, 427 A.2d 979 (1981). On the other hand, we "shun a construction of the statute which will lead to absurd consequences". *Erwin & Shafer, Inc. v. Pabst Brewing Co.*, 304 Md. 302, 311, 498 A.2d 1188 (1985), or "a proposed statutory interpretation if its

consequences are inconsistent with common sense." *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195 (1985). 68 Md.App. 342, 346–47, 511 A.2d 578 (1986), *cert. denied*, 307 Md. 596, 516 A.2d 567 (1986). Moreover, we "may not insert or omit words to make a statute express an intention not evidenced in its original form." *Hackley*, 300 Md. at 283, 477 A.2d 1174. We are mindful, however, of what the Court of Appeals stated in *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987):

> When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

 Nevertheless, as *Kaczorowski* pointed out, in attempting to discern the legislative intent we must look first to the words of the statute, "because what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal." *Id.* at 513, 525 A.2d 628. If the language is clearly consistent with the apparent purpose and not productive of any absurd result, further research is unnecessary. *Id.* at 515, 525 A.2d 628. But if the statutory language is susceptible of more than one meaning and thus is ambiguous, courts should consider "not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *Id.* at 513, 525 A.2d 628, quoting from *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986). The statute should then be given that construction which will effectuate or carry out its purpose or object. *Johnson v. State*, 75 Md.App. 621 542 A.2d 429 (1988), *cert. denied*, 316 Md. 675, 561 A.2d 21

(1989). And *Kaczorowski* further demonstrates that, in the rare case in which it is apparent to the court that plain, clear, and unambiguous language in the statute does not express or carry out the intent of the legislature, the legislative intent as discerned by the court will prevail over the plain meaning of the words of the statute.

■ Looking at the words of this statute and giving those words their ordinary meaning, we discern no ambiguity or obscurity. The first sentence states, in clear, precise, and definite terms that an insurance company that intends either to cancel a written agreement with an agent or to refuse any class of renewal business from the agent must give the agent not less than 90 days written notice.[1] The second sentence is likewise plain, clear, and unambiguous. For at least one year after terminating an agency contract, the insurer must continue to renew through that agent any policies that have not been replaced with other insurers as those policies expired. It is the third sentence of subsection (b) of § 234B that produces the controversy. Subsection (b), which requires the insurer desiring to terminate a written agency agreement to do two things—(1) give the agent 90 days notice of termination and (2) renew any policies procured by the agent for at least one year unless that policy has been replaced by one issued through another insurer—has two specific exceptions. First, subsection (b) does not apply to either *agents* or *policies* of companies represented by what the parties refer to as "captive" agents, *i.e.*, agents who represent only those companies, provided cancellation of the agent's contract does not result in cancellation or refusal to renew any insurance policies. Second, subsection (b) does not apply to *policies* of life, health, surety, wet marine, and title insurance.

The first exception in the third sentence of subsection (b), making the subsection inapplicable to both agents and polices, is certainly not ambiguous or obscure. If a company is

---

1. "Agent" as used herein means "agent or broker" as those terms are combined in § 234(b).

represented by agents who work only for that company, the 90–day notice requirement does not apply to those agents and the one year policy renewal requirement does not apply to the company's policies unless termination of the agency would result in cancellation or non-renewal of policies. That provision, at least, cannot reasonably or logically be given any other interpretation, and we can discern no legislative policy at variance with that interpretation. The obvious intent of § 234B is to protect the livelihood of independent insurance agents and brokers and, incidentally, to provide some protection for their customers or clients by avoiding unexpected termination of insurance coverage. The relationship between a "captive" agent and the company which he or she represents is that of employee and employer and the contractual agreement between them is really an employment contract, not an insurance agency.

The second exception to the applicability of subsection (b) relates solely to certain types of insurance policies. Companies, such as Lincoln, that issue life insurance policies, and companies that issue health, surety, wet marine, and title insurance are not required to continue to renew such policies through an agent whose written agency agreement has been terminated. The logic of excepting those types of policies from the renewal requirement of subsection (b) was made understandable by the testimony of an expert witness for Lincoln. Unlike property and casualty insurance policies, which typically have to be renewed annually or semi-annually, life, health, surety, wet marine,[2] and title policies remain in effect for a specified period of time, or for a particular occasion, or until a certain event or occurrence, and are not renewed periodically.

Lincoln, through the testimony of the expert witness and its arguments to the Commissioner, the circuit court, and this Court, maintained that the reasons for excluding life, health, and title insurance policies from the provisions of

---

**2.** Wet marine and transportation insurance is defined in art. 48A, § 70.

§ 234B(b) apply equally to agents who solicit applications for such policies and, consequently, the legislative intent was to except such agents as well as such policies from the protective provisions of the first two sentences of subsection (b).

Lincoln's position is that an agent who produces property and casualty insurance policies, which renew annually or semi-annually, must get the insured to renew in order to earn his or her commission. If the agency is terminated, the agent will not receive the renewal commission. The 90–day termination notice provision and one year policy renewal provision offer some protective cushion for the agent's non-vested commission income until the agent secures a contract with another company through which to place similar insurance. Conversely, life insurance and health insurance agents have a contractual right with the company to receive certain continuing commissions based on the policy holders maintaining their policies. These types of policies are ongoing; if the agent terminates with the company, the company is still responsible to pay commissions for a certain period of time, sometimes for as long as the policy is in force and maintained by the policy holder. These types of policies are also more stable; agents' commissions are *vested* and they do not need the protection of 90–days notice. Lincoln argues that since such agents receive greater benefits, there is no reason to require the industry to incur 90 days of additional costs.

Lincoln's argument might be a reasonable one to make to the General Assembly, but it fails to persuade us to read the statute as Lincoln does. Where the legislature intended to except both agents and policies from the provisions of subparagraph (b), it did so explicitly and unequivocally. "Captive" agents as well as policies written by the companies represented by "captive" agents are expressly excepted. But with respect to life, health, wet marine, and title insurance, the legislature excepted only the policies, not the agents representing the companies that issue such policies. To interpret the statute as Lincoln would have us do, we

would have to add words to the third sentence of § 234B(b) to make the pertinent portion of it read, in substance, as follows:

> This subsection shall not apply to—(2) life, health, surety, wet marine and title insurance policies *and agents and brokers who represent companies that issue such policies.* (Added words emphasized.)

We decline to read that additional language into the statute. To do so would violate one of the principle canons of statutory construction, *City of Baltimore v. Hackley, supra,* and we see nothing in the statute, or its history, or its apparent purpose that persuades us that the General Assembly intended it to be read as if the additional language were inserted.

We hold, therefore, that the Insurance Commissioner correctly construed the statute and that the circuit court, by misconstruing the statute, erred in reversing the Commissioner's decision and order.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.